UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>– against –<br><br>ELTON HITTMAN ABRAMS,<br><br>                Defendant. | **MEMORANDUM & ORDER**<br><br>18-CR-431 |

**Jack B. Weinstein, Senior United States District Judge:**

| **Parties** | **Appearances** |
|---|---|
| For United States | Andrew Grubin<br>Assistant United States Attorney<br>Eastern District of New York<br>271 Cadman Plaza East<br>Brooklyn, NY 11201-1820<br>718-254-6322 |
| For Defendant | Michael K. Schneider<br>Federal Defenders of New York, Inc.<br>One Pierrepoint Plaza, 16th Floor<br>Brooklyn, NY 11201<br>718-330-1200 |

**Table of Contents**

I. Introduction ................................................................................................................. 1

II. Facts .......................................................................................................................... 2

   A. Defendant's Background and the Maryland Conviction .................................... 2

   B. Defendant's Removal Proceeding ....................................................................... 2

   C. Defendant's Return to the United States and Instant Motion ............................. 3

III. Law ........................................................................................................................... 4

   A. Removal from the United States ......................................................................... 4

   B. Illegal Reentry and Collateral Challenge to Prior Removal Order ..................... 5

IV. Application of Law to Facts ..................................................................................... 6

   A. Fundamental Unfairness ...................................................................................... 6

      1. Defendant Was Convicted of an Offense Relating to a Controlled Substance ........... 7

      2. Defendant Was Not Convicted of an Aggravated Felony ......................................... 9

   B. Exhaustion of Administrative Remedies and Deprivation of an Opportunity for Judicial Review ................................................................................................................. 13

V. Conclusion ............................................................................................................... 15

## I. Introduction

This memorandum deals with an offense that the federal courts are increasingly addressing by criminal prosecutions: illegal reentry into the United States. Elton Hittman Abrams is charged with illegally reentering the United States following his removal in 1999. He moves to dismiss the indictment, contending that his Maryland criminal conviction for maintaining a common nuisance, "to wit: cocaine," was an improper basis for removal because it was not an aggravated felony or relating to a controlled substance. The government contends that the immigration judge correctly concluded that the conviction was an appropriate basis for removal. Though the offense was not an aggravated felony, the removal order is a valid basis for the present prosecution because the offense relates to a controlled substance—cocaine. Defendant's motion to dismiss is denied.

II. Facts

A. Defendant's Background and the Maryland Conviction

Abrams, a citizen of Guyana, immigrated to the United States as a lawful permanent resident on April 6, 1995. Decl. Michael K. Schneider ¶ 11, ECF No. 23-1 ("Schneider Decl."). He was 20 years old. Mem. L. Opp. Elton Hittman Abram's Mot. Dismiss Indictment Ex. B, at EHA_000001, ECF No. 28-2.

Less than two years later, Defendant pled guilty to maintaining a common nuisance, "to wit: cocaine," in violation of Maryland Code Article 27, Section 286(a)(5). Schneider Decl. ¶ 12; Mem. L. Opp. Elton Hittman Abram's Mot. Dismiss Indictment Ex. D, at EHA_000117, ECF No. 28-4 ("Gov't Ex. D"); Mem. L. Opp. Elton Hittman Abram's Mot. Dismiss Indictment Ex. C, ECF No. 28-3 ("Gov't Ex. C"). He was sentenced to two years' incarceration, about one year of which he served before being released into the custody of the Immigration and Naturalization Service ("INS"). Gov't Ex. C; Schneider Decl. ¶ 12.

B. Defendant's Removal Proceeding

INS alleged that Abrams was removable from the United States because he had been convicted of an offense relating to a controlled substance and an aggravated felony. Mem. L. Opp. Elton Hittman Abram's Mot. Dismiss Indictment Ex. A, at EHA_000179, ECF No. 28-1; Mem. L. Opp. Elton Hittman Abram's Mot. Dismiss Indictment Ex. E, at EHA_000183, ECF No. 28-5. Abrams hired Stuart M. Kurland, Esq. to represent him; Kurland does not remember the representation. Schneider Decl. ¶ 15; Mem. L. Opp. Elton Hittman Abram's Mot. Dismiss Indictment Ex. F, ¶ 4, ECF No. 28-6 ("Kurland Affirmation").

Kurland appeared at several removal hearings and filed a brief arguing that Abrams could not be removed because the Maryland conviction was neither an aggravated felony nor a conviction relating to a controlled substance. Tr. Removal Proceedings; Schneider Decl. ¶ 15.

Kurland contended that the offense of common nuisance was not sufficiently relating to a controlled substance and was not within the definition of an aggravated felony. Reply Mem. L. Support Def.'s Mot. Dismiss Indictment Ex. A, ECF No. 29-1. At a hearing in January 1999, however, he conceded that the underlying offense was an aggravated felony and relating to a controlled substance. Tr. Removal Proceedings 9; Reply Mem. L. Support Def.'s Mot. Dismiss Indictment 2 n.1, Jan. 24, 2019, ECF No. 29 ("Reply Mem."). The immigration judge ordered Defendant removed from the United States. Schneider Decl. Ex. C, ECF No. 23-4.

Abrams reserved his right to appeal the removal order. *Id.* He recalls that he instructed Kurland to file an appeal and paid him $1,200 in cash at the conclusion of the January 1999 hearing for this purpose. Schneider Decl. Ex. A, ¶ 5, ECF No. 23-2. Several months later, however, Defendant received a notice from INS requiring him to present himself for removal. *Id.* ¶ 6. He contacted Kurland, who told Abrams that he had not filed an appeal. *Id.* ¶ 7. Kurland does not recall this, but stated that he "h[as] never and would never commit to a client that [he] would appeal a decision by an immigration judge and then not do so without consulting with the client." Kurland Affirmation ¶ 7.

In August 1999, Abrams voluntarily reported to INS. Schneider Decl. ¶ 22. He was detained until December 28, 1999, when he was removed to Guyana. *Id.* ¶ 23.

### C. Defendant's Return to the United States and Instant Motion

Sometime after his removal, Abrams returned to the United States. He was arrested by United States Immigration and Customs Enforcement in July 2018 after agents approached him while he sat in a car in Brooklyn and charged with illegal reentry after removal, in violation of 8 U.S.C. §§ 1326(a) and (b)(1). Schneider Decl. ¶ 3; Indictment, Aug. 14, 2018, ECF No. 8.

Defendant moves to dismiss the indictment, arguing that the removal order cannot serve as the basis for an illegal reentry prosecution because it was fundamentally unfair. *See* Mem. L.

3

Support Def.'s Mot. Dismiss Indictment 8–14, Nov. 30, 2018, ECF No. 23-5 ("Mot. Dismiss Mem."); Reply Mem. at 9–15. It was fundamentally unfair, he contends, because the underlying conviction was not a removable offense. *Id.* Defendant also argues that he may challenge the validity of the removal order because (1) any failure to exhaust his administrative remedies as to the removal order is excused because he was ineffectively assisted by counsel, and (2) he was deprived of judicial review by ineffective assistance of counsel. *See* Mot. Dismiss Mem. at 5–8; *see also* 8 U.S.C. § 1326(d) (2017). The government opposes the motion on the grounds that the conviction was a removable offense and Defendant had effective counsel. *See* Mem. L. Opp. Elton Hittman Abram's Mot. Dismiss Indictment, Jan. 10, 2019, ECF No. 28.

### III. Law

#### A. Removal from the United States

Immigration law has become more exclusionary over the course of the last century. Before 1917, immigrants could only be excluded from the United States on limited grounds. *See Padilla v. Kentucky*, 559 U.S. 356, 360 (2010). Efforts to remove immigrants already in the United States were short-lived. *See id.*

The Immigration Act of 1917, for the first time, created categories of aliens removable for conduct in the United States. *Id.* at 361. Removal could be cancelled, however, by the sentencing judge. *Id.* at 361–62. Since then, the categories of crimes which result in an alien's removal have increased, and the authority of judges to cancel removal has been limited. *Id.* at 363–64. Federal law currently sets out more than a half-dozen categories of crimes which can result in an alien's removal. *See* 8 U.S.C. § 1227(a)(2) (2017).

Removal—and its threat—has grave effects on aliens and their family members. *See* Society for Community Research and Action: Division 27 of the American Psychological Association, *Statement on the Effects of Deportation and Forced Separation on Immigrants,*

4

*their Families, and Communities*, 62 Am. J. Community Psychol. 3 (2018) (describing the psychosocial effects of removal); Randy Capps et al., *Implications of Immigration Enforcement Activities for the Well-Being of Children in Immigrant Families* (2015) (reviewing literature analyzing the effects of removal on children and families).

Before removal, aliens are still entitled to an administrative proceeding during which they can challenge removal. 8 U.S.C. § 1229a (2017). Counsel can be retained, but not at the expense of the government. *Id.* § 1362.

At the time of Defendant's offense and removal proceeding, an alien could be removed from the United States, *inter alia*, for conviction of an aggravated felony and for conviction of an offense relating to a controlled substance. *See* 8 U.S.C. § 1227(a)(2)(A)(iii) (1996) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable."); *id.* § 1227(a)(2)(B)(i) ("Any alien who at any time after admission has been convicted of a violation of . . . any law or regulation of a State, the United States, or a federal country relating to a controlled substance (as defined in section 802 of title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.").

**B. Illegal Reentry and Collateral Challenge to Prior Removal Order**

Once an alien is removed from the United States, it is a crime for him or her to enter, attempt to enter, or be found in the United States without the express consent of the Attorney General. 8 U.S.C. § 1326(a) (2017). The number of defendants charged with illegal reentry has soared in the past several years. In the year ending March 31, 2018, more than 19,000 defendants were charged with illegal reentry—23.6% of all defendants and 16.2% more defendants than were charged with the same crime the prior year. *Federal Judicial Caseload Statistics 2018*, United States Courts, https://www.uscourts.gov/statistics-reports/federal-judicial-caseload-statistics-2018; United States Courts, *Table D-2. U.S. District Courts—Criminal*

5

*Defendants Commenced (Excluding Transfers), by Offense, During the 12-Month Periods Ending March 31, 2014 Through 2018* (2018), https://www.uscourts.gov/file/24441/download.

To be convicted of illegal reentry, there must exist a prior, valid removal order. *United States v. Copeland*, 376 F.3d 61, 66 (2d Cir. 2004). "An alien can defend against [an illegal reentry] charge by challenging the validity of the deportation order upon which the charge is predicated." *Id.* To successfully challenge the validity of a removal order, a defendant must establish three elements:

> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d) (2017).

### IV.  Application of Law to Facts

#### A. Fundamental Unfairness

Defendant's argument for dismissal centers on the contention that entry of the removal order was fundamentally unfair because the immigration judge erroneously concluded that Defendant's Maryland conviction was for an aggravated felony or was relating to a controlled substance.

To demonstrate that entry of a removal order was fundamentally unfair, a defendant must show "both a fundamental procedural error and prejudice resulting from that error"—that but for the error, the removal order would not have been entered. *United States v. Scott*, 394 F.3d 111, 117 (2d Cir. 2005) (internal quotation marks and citation omitted); *see also United States v. Daley*, 702 F.3d 96, 100 (2d Cir. 2012). Defendant cannot carry that burden. Though the

6

immigration judge erred in concluding that the Maryland conviction was an aggravated felony, he correctly concluded that the offense was relating to a controlled substance.

### 1. Defendant Was Convicted of an Offense Relating to a Controlled Substance

An alien is removable when convicted of a crime "relating to a controlled substance . . . , other than a single offense involving possession for one's own use of 30 grams or less of marijuana." 8 U.S.C. § 1227(a)(2)(B)(i) (1996). This language is intended "to sweep broadly, applying to a violation of *any* law or regulation, whether state, federal, or foreign, *relating* to a controlled substance." *Mizrahi v. Gonzales*, 492 F.3d 156, 159 (2d Cir. 2007) (internal quotation marks and citation omitted).

The ordinary inquiry to ascertain whether a crime is relating to a controlled substance asks what the minimum conduct criminalized under the statute of conviction is. *Id.* at 160; *Vargas-Sarmiento v. United States Dep't of Justice*, 448 F.3d 159, 166 (2d Cir. 2006). If that minimum conduct involves a controlled substance other than 30 grams or less of marijuana for one's own use, the offense relates to a controlled substance. *See* 8 U.S.C. § 1227(a)(2)(B)(i) (1996). This is the "categorical approach."

When a statute criminalizes separate offenses, however, a court must consider the specific facts underlying a conviction by reviewing "a limited class of documents," such as the indictment, jury instructions, or plea agreement and colloquy. *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016); *Mizrahi*, 492 F.3d at 159 (a violation "need not be reflected in an actual criminal conviction; it can be evidenced by an alien's admission to a violation of law relating to a controlled substance"). This is called the "modified categorical approach."

The first step, then, is to determine whether the categorical approach or the modified categorical approach applies here. If the Maryland statute under which Defendant was convicted contains separate offenses, the modified categorical approach will guide the court's analysis.

The statute in question applies different criminal penalties depending on the controlled substance involved in the crime. *Compare* Md. Code Ann., Art. 27 § 286(b)(1) (LexisNexis 1994) (20-year maximum sentence for a conviction with respect to a Schedule I or II narcotic), *with id.* § 286(b)(3) (5-year maximum sentence for a conviction with respect to other Schedule I, II, III, IV, or V drugs). Because a jury must agree on the specific controlled substance so that the appropriate penalty can be applied, the statute contains separate offenses. *See Harbin v. Sessions*, 860 F.3d 58, 65 (2d Cir. 2017) (statute did not contain separate offenses when it provided "no indication that the sale of each substance is a distinct offense" and "does not suggest that a jury must agree on the particular substance sold"); *see also United States v. Hill*, 471 F. App'x 143, 162 (4th Cir. 2012) (the successor statute to the Maryland statute contains separate offenses "[b]ecause the maximum penalty . . . depends on the drug distributed"); *United States v. Bassett*, No. WMN-11-512, 2016 WL 3351330, at *7 (D. Md. June 16, 2016) ("The penalty for a violation of [the successor statute to the Maryland statute] . . . depends on the substance at issue . . . .").

Because the statute contains separate offenses, the modified categorical approach applies and the facts underlying Defendant's conviction are relevant. The count to which Abrams pled guilty reads:

> And the State's Attorney aforesaid, with powers and authority as aforesaid, informs the said Court that the said DEFENDANT(S) late of said City, on the said date(s), at the said place, at the City aforesaid, unlawfully did KEEP and MAINTAIN a certain (dwelling/) at the aforesaid location in said City, which was then and there resorted to by drug abusers for the purpose of illegally administering Controlled Dangerous Substance(s) and was used for the illegal Manufacture, Distribution, Storage and Concealment of <u>Controlled Dangerous Substance(s) of Schedule #2, to wit: cocaine</u> which (/is) a Narcotic Drug; contrary to the form of the Act of Assembly, in such case made and provided, and against the peace, government and dignity of the State.

Gov't Ex. D, at EHA_000117 (emphasis added); *see also* Gov't Ex. C. This language makes it clear that an element of the crime to which Defendant pled involved cocaine. Cocaine was a controlled substance. 21 C.F.R. § 1308.12(b)(4) (1996); 21 C.F.R. § 1308.12(b)(4) (1995). Because cocaine was an element of the crime, the offense is "relating to a controlled substance."

Defendant's counsel has proposed the following argument:

> [T]he failure of the Maryland statute to include a mens rea element prevents it from being classified as an offense "relating to a controlled substance." . . . [O]ne may violate the Maryland statute by maintaining a place where others go to use illegal drugs. The statute requires not intent or knowledge at all on the part of the defendant. Thus, the conduct prohibited by the statute is simply the maintenance of a premises "resorted to by drug abusers for purposes of illegally administering" narcotics. Without a mens rea [requirement], it is impossible to say that the conduct of maintaining a premises, without knowledge that others may be using drugs there, is conduct "relating to a controlled substance."

Reply Mem. at 14–15. There is merit in this position. The federal courts have adopted an expansive view of the term "relating to." Until the Court of Appeals for the Second Circuit or the Supreme Court adopts the view Defendant proposes, courts follow the circuit's rule requiring an expansive construction.

Since Defendant's Maryland conviction was relating to a controlled substance, entry of the removal order was not fundamentally unfair. Since the order was not fundamentally unfair, Defendant cannot meet the three prongs of 8 U.S.C. § 1326(d) (2017), and the removal order is valid.

### 2. Defendant Was Not Convicted of an Aggravated Felony

In case the appellate court rejects the cocaine argument above, the parties' argument about whether Defendant's Maryland conviction was an aggravated felony is addressed below.

At the time of the conviction, an "aggravated felony" included "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including "any felony punishable

9

under the Controlled Substances Act ["CSA"]." 8 U.S.C. § 1101(a)(43)(B) (1996); 18 U.S.C. § 924(c)(2) (1996). A felony was an offense punishable by a maximum term of more than one year. 18 U.S.C. § 3559(a) (1996).

A state drug offense is an aggravated felony if the statute of conviction criminalizes the same conduct that is a felony under the CSA. *Moncrieffe v. Holder*, 569 U.S. 184, 192 (2013). If the Maryland statute at issue contains separate offenses depending on the controlled substance at issue, *see supra* Part IV.A.1, the specific circumstances of the crime are relevant. *See Harbin*, 860 F.3d at 64–65. When the elements of the crime as committed are the same as those of a federal felony offense, the state law conviction is an aggravated felony. *Mathis*, 136 S. Ct. at 2249.

For conviction of the Maryland offense, Defendant had to have been found (1) to keep or maintain (2) a dwelling (3) which is resorted to by drug abusers for purposes of illegally administering cocaine and was used for the illegal manufacture, distribution, storage, and concealment of cocaine (4) on a recurring basis. Gov't Ex. D, at EHA_000117; Gov't Ex. C; *see also Skinner v. State*, 293 A.2d 828, 834 (Md. 1972); Maryland State Bar Association, *Maryland Criminal Pattern Jury Instructions* § 4:24.8 (2018) ("In order to convict the defendant of keeping a common nuisance, the State must prove that the defendant kept either: (1) a place that another person or persons repeatedly or continuously used to administer, distribute, dispense, store, or conceal a controlled dangerous substance or drug paraphernalia; or (2) a place in which a controlled substance or drug paraphernalia, intended for use by others, was repeatedly stored or concealed.").

The analogous federal felony offense at the time of Defendant's conviction was the federal stash house statute:

> [I]t shall be unlawful to—
>
> (1) knowingly open or maintain any place for the purpose of manufacturing, distributing, or using any controlled substance;
>
> (2) manage or control any building, room, or enclosure, either as an owner, lessee, agent, employee, or mortgagee, and knowingly and intentionally rent, lease, or make available for use, with or without compensation, the building, room, or enclosure for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance.

21 U.S.C. § 856(a) (1996).

To be convicted of this federal offense, a defendant must have been found to have engaged in one of two types of conduct: *First*, a defendant must have been shown (1) to knowingly open or maintain (2) any place (3) for the purpose of manufacturing, distributing, or using any controlled substance. *United States v. Wilson*, 503 F.3d 195, 197–98 (2d. Cir. 2007). *Second*, alternatively, a defendant must have been shown (1) to manage or control (2) a building, room, or enclosure (3) as an owner, lessee, agent, employee, or mortgagee (4) and <u>knowingly and intentionally</u> rent, lease or make available for use the building, room, or enclosure for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance. *Id.* Cocaine was a controlled substance. 21 C.F.R. § 1308.12(b)(4) (1996); 21 C.F.R. § 1308.12(b)(4) (1995).

A comparison of these elements reveals that the Maryland statute is broader than the federal statute. The federal statute requires that <u>a defendant knowingly and intentionally</u> maintain the premises or make the premises available, while the Maryland statute requires a lesser mens rea—<u>a defendant must keep or maintain the premises</u>. The Maryland statute criminalizes, for example, the ownership of a summer home at which people gather to make and

11

use drugs even if the owner is not aware of their use. The federal statute, by contrast, criminalizes the ownership of the summer home if the owner knows and intends that people gather there.

During oral argument, the government cited several cases to support its contention that the Maryland statute requires knowing and intentional conduct. *See Davis v. State*, 641 A.2d 941 (Md. Ct. Spec. App. 1994); *Tucker v. State*, 308 A.2d 696 (Md. Cr. Spec. App. 1973); *Kolker v. State*, 186 A.2d 212 (Md. 1962). They do not support that conclusion. In *Kolker*, the court explicitly refrained from concluding whether scienter was required under a different statute, holding that evidence that a night club proprietor knew that female employees were engaging in sexual activity with male patrons was sufficient for conviction. 186 A.2d at 212. In *Davis* and *Tucker*, the court focused on whether premises were used by people other than the defendants, rather than on defendants' mens rea. In *Davis*, the court concluded that a home owner's conviction for maintaining a building as a common nuisance could not be supported because evidence of drugs and paraphernalia recovered from the home and police testimony concerning typical, multiple person use of these items was insufficient to rule out that <u>only</u> the home owner had used the drugs and paraphernalia at the home. 641 A.2d at 950, 954–55. Similarly, in *Tucker*, the court concluded that a hotel room occupant was not guilty of maintaining a common nuisance when the evidence showed only that he kept heroin in the room that he used and that people visited him during his stay. 308 A.2d at 699–700.

Since the conduct criminalized by the Maryland statute is broader than that criminalized by the federal statute, Defendant's offense was not an aggravated felony and it was an error for the immigration judge to so conclude.

### B. Exhaustion of Administrative Remedies and Deprivation of an Opportunity for Judicial Review

Because entry of the removal order was not fundamentally unfair, it is inconsequential whether Defendant exhausted his administrative remedies or whether he was deprived of an opportunity for judicial review. But the circumstances of the removal proceeding, if true, suggest that Defendant was denied effective assistance of counsel. This matter is addressed in view of the sharp increase in removal proceedings and importance of effective assistance of counsel in such proceedings. *See Watson v. United States*, 179 F. Supp. 3d 251, 257 (E.D.N.Y. 2016) ("There is a clear, unmet need for counsel in immigration cases. Had an attorney been available to him at the outset, plaintiff probably promptly would have been declared a citizen and released almost immediately after he was arrested, if he were arrested at all."), *aff'd in part, rev'd in part*, 865 F.3d 123, 136 (2d Cir. 2017) (Katzmann, C.J., concurring in part and dissenting in part) ("This case is a striking illustration of the [negative] consequences that stem from the government's broad discretion to initiate detention and removal proceedings, coupled with the sometimes limited ability even a U.S. citizen has to assert a valid claim of citizenship in the absence of the assistance of counsel."); *Aris v. Mukasey*, 517 F.3d 595, 596 (2d Cir. 2008) ("With disturbing frequency, this Court encounters evidence of ineffective representation by attorneys retained by immigrants seeking legal status in this country."); *see also* Robert A. Katzmann, *The Legal Profession and the Unmet Needs of the Immigrant Poor*, 21 Geo. J. Legal Ethics 3, 5–10 (2008) (describing the challenges in immigration proceedings); Michael Kaufman, *Detention, Due Process, and the Right to Counsel in Removal Proceedings*, 4 Stan. J. C.R. & C.L. 113, 121–23, 147–49 (2008) (describing the positive implications of a right to appointed counsel in removal proceedings).

When collaterally challenging a removal order, the alien must have exhausted his or her administrative rights; this may be excused when failure to exhaust was not knowing and intelligent because of ineffective assistance by counsel. *United States v. Sosa*, 387 F.3d 131, 137 (2d Cir. 2004); *United States v. Calderon*, 391 F.3d 370, 374–75 (2d Cir. 2004). Abrams contends that he did not exhaust administrative remedies because his attorney failed to appeal the removal order when asked to do so. The attorney disagrees with this characterization. When counsel has been asked to file an appeal of a removal order but has failed to do so, exhaustion of the alien's administrative rights is excused. *See Esposito v. Immigration and Naturalization Serv.*, 987 F.2d 108, 111 (2d Cir. 1993) ("a competent attorney would have acted otherwise" when counsel failed to appeal a removal order after being instructed to do so by the alien).

As to the final requirement for collateral challenge of a removal order, Defendant argues that he was denied an opportunity for judicial review of the removal order. Defendant would have had such an opportunity if filing a petition for habeas corpus was "realistically possible." *Copeland*, 376 F.3d at 68; *see Calcano-Martinez v. I.N.S.*, 533 U.S. 348, 351 (2001). But if Abrams was provided ineffective assistance of counsel, seeking habeas review would have been unrealistic. His failure to exhaust remedies would likely have doomed a habeas petition, and he was in custody for a short period of time. *See Copeland*, 376 F.3d at 69 (two years between order and removal did not provide a realistic opportunity for judicial review when the alien had failed to exhaust his administrative remedies after the immigration judge gave him inaccurate information about his eligibility for discretionary relief); *Sosa*, 387 F.3d at 138 (alien "did not have a realistic possibility" to seek judicial review by a habeas petition when there was less than one month between the removal order and removal and the alien was unrepresented).

As removal proceedings become more common, it is imperative that aliens have access to effective counsel. Though the conduct of Defendant's counsel did not undermine validity of the removal order in this instance, under different circumstances, similar conduct could have that result. *See United States v. Cerna*, 603 F.3d 32, 35–36 (2d Cir. 2010) ("For non-citizens at risk of deportation, the consequences of inadequate counsel can be devastating. Because such incompetence undermines the fair and effective administration of justice, courts must be ever vigilant. We cannot countenance the circumstance in which the failure of counsel to meet the most basic professional standards denies the alien a meaningful opportunity for judicial review." (internal citation omitted)).

## V. Conclusion

Because entry of the removal order underlying the indictment was not fundamentally unfair, Defendant has not demonstrated that the requirements of 18 U.S.C. § 1326(d) (2017) are met. The motion to dismiss the indictment is denied.

SO ORDERED.

/s/ Jack B. Weinstein
Jack B. Weinstein
Senior United States District Judge

Dated: March 7, 2019
Brooklyn, New York